# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Bankruptcy Appeal |
|    PETER C. KOVALCHICK, | : | |
|           Debtor | : | No. 3:06cv1066 |
| | : | |
| | : | (Judge Munley) |
| ::::::::::::::::::::::::::::::::::::::::::::::::::: | | |
| PETER C. KOVALCHICK, | : | |
|           Appellant | : | |
| | : | |
| | : | |
|       v. | : | |
| | : | |
| JUDGE CYRUS P. DOLBIN, | : | |
| R/S FINANCIAL CORPORATION, | : | |
| ROBERT ROSENSTEIN, | : | |
| MIRIAM SMALLS, | : | |
| SPRAGUE & SPRAGUE, and | : | |
| RICHARD A SPRAGUE, | : | |
|           Appellees | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before this Court is plaintiff-appellant's appeal of the Bankruptcy Court for the Middle District of Pennsylvania's order granting defendants' motions to dismiss the adversary complaint brought by appellant in that court (Doc. 1). For the following reasons, we will affirm the decision of the bankruptcy court.

**I. Background**

On December 8, 2005 Appellant Peter Kovalchick filed an adversary motion in

Bankruptcy Court against Judge Cyrus P. Dolbin of the Pennsylvania Court of Common Pleas, the R/S Financial Corporation, and various attorneys involved in a state court quiet title action against him. The complaint alleged a number of civil rights violations under 42 U.S.C. §1983 against Judge Dolbin, as well as tort claims against the other defendants. After denying the plaintiff's motion for injunctive relief, the bankruptcy court entertained the defendants' motions to dismiss for failure to state a claim under Federal Rule of Bankruptcy Procedure 7012. The court dismissed all of the claims against Judge Dolbin, finding the judge protected by absolute judicial immunity. The court likewise dismissed the claims against the other defendants, holding that the bankruptcy court lacked jurisdiction over those claims under Title 11 of the Bankruptcy Act.

## II. Jurisdiction

We have jurisdiction over the instant bankruptcy appeal pursuant to 28 U.S.C. § 158(a)(1), which provides that the district courts of the United States have jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy courts.

## III. Standard of Review

The bankruptcy court ruled on defendants' motions to dismiss pursuant to FED. R. BANKR. P. 7012. In ruling on such motions, the bankruptcy court applies the standards used to decide motions to dismiss under FED. R. CIV. P. 12(b)(6). See Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). Under that rule,

a court may dismiss a complaint that fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  When evaluating a motion to dismiss a complaint under that rule, we accept as true all allegations made in the complaint, drawing all reasonable inferences from those allegations, and viewing the complaint in the light most favorable to the plaintiff.  Jenkins v. McKeithern, 395 U.S. 411, 412-22 (1969); Schrob v. Catterson, 948 F2d 1402, 1405 (3d Cir. 1991).  As we evaluate bankruptcy court decisions of law *de novo*, we review the bankruptcy judge's decision using that standard.  See, e.g., In re O'Brien Environmental Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999).

**IV. Immunity for Judge Dolbin from Suit in Federal Court**

Kovalchick brought five causes of action against Judge Dolbin for violating his fourth, seventh, and fourteenth amendment rights when he presided over a state court action to quiet title on real property located at 98 Archery Club Road in New Ringgold, Pennsylvania.[1]  That action was filed by R/S Financial against Kovalchick, and the bankruptcy court had lifted the automatic stay issued on such actions by the bankruptcy court to allow that proceeding to go forward.  Judge Dolbin then found in

---

[1] Those complaints included: "Count I: Violation of 42 U.S.C. Section 1983–Due Process of Law"; Count II: Violation of 42 U.S.C. Sec. 1983–Due Process and Equal Protection (Absence of Jurisdiction)"; Count III: Violation of 42 U.S.C. Section 1983–Due Process (lack of jurisdiction); Count IV: Violation of 42 U.S.C. Section 1983–Due Process; Count V: Violation of 42 U.S.C. Section 1983–Due Process". (Emergency Motion for Injunctive Relief Complaint, United States Bankruptcy Court for the Middle District of Pennsylvania, case number 05-ap-50295, Doc. 1) (hereinafter cited as "Emergency Motion for Injunctive Relief Complaint").

3

favor of R/S Financial, and various litigation from Kovalchick has followed.  Included in that litigation was Kovalchick's "Emergency Motion for Injunctive Relief Complaint" in the Bankruptcy Court, the subject of the present appeal. Judge Dolbin filed a motion to dismiss the complaint, claiming the absolute immunity afforded judges acting in their judicial capacity prevented the bankruptcy court from asserting jurisdiction over such claims.  The bankruptcy court agreed with Judge Dolbin.  We will uphold the bankruptcy judge's dismissal of the five claims against Judge Dolbin, finding that he enjoys absolute immunity from suit for his actions in the case.

The United States Supreme Court has been clear that "'judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.'" Stump v. Sparkman, 435 U.S. 349, 355-56 (1978) (quoting Bradley v. Fisher, 13 Wall. 335, 351 (1872)).  This doctrine aims to keep judges independent from influence and protect them from intimidation by those who would use the threat of court action to influence the outcome of a proceeding. See Pierson v. Ray, 386 U.S. 547, 554 (1967) (finding that "it is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feeling in the litigants.  His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption.  Imposing such a burden on judges would contribute not to principled and fearless decision-making but to

4

intimidation."). Judges enjoy this immunity as long the judge had subject matter jurisdiction over the action. Stump, 435 U.S. 356. See Mireles v. Waco, 502 U.S. 9, 13 (1991) (holding that a judge accused of ordering deputies to use excessive force to compel an attorney to appear before the judge was immune because compelling attorneys to appear was a judicial function). The key questions in such cases are thus whether the judge's act was judicial in nature, and whether the judge acted within the bounds of his jurisdiction.

This doctrine applies when the plaintiff brings a suit seeking injunctive relief under 42 U.S.C. § 1983 unless the plaintiff alleges that a "declaratory decree was violated or that declaratory relief was unavailable." See Bolin v. Story, 225 F.3d 1234, 1242 (11th Cir. 2000) (holding that the Federal Courts Improvement Act of 1996, which amended 42 U.S.C. §1983, made judges immune from suits for injunctive relief under §1983 absent an allegation that a declaratory decree had been violated or a claim that declaratory relief was unavailable.); see also Dennis v. Sparks, 449 U.S. 24, 27 (1980) (quoting Pierson v. Ray, 386 U.S. 547 (1967) to say that "judges defending against §1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities.").

Judge Dolbin had jurisdiction over the case. Because judicial immunity from suit for decisions made in a judicial capacity is important to the fair administration of justice, "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." Stump, 435 U.S. at 356. Judge Doblin sits on

the Pennsylvania Court of Common Pleas, a court of general jurisdiction. Under the Pennsylvania Judical Code, a court of common pleas has "unlimited original jurisdiction of all acts actions and proceedings." 42 PENN. CONS. STAT. ANN. § 931. Here, the original action over which Judge Dolbin presided was one brought by R/S Financial to quiet title on the property at 98 Archey Road in New Ringgold, Pennsylvania. Under Pennsylvania law, a quiet title action "may be brought . . . to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land." PA. R. CIV. P. 1061. A quiet title action in Pennsylvania therefore requires that the court determine who owns the property, and under what terms. As in any real estate transaction, the court must determine how the property was conveyed from owner to owner, and whether all of those conveyances were legally valid ones. In this case, there was a dispute about whether an October 20, 1977 deed from Kovalchick's parents to him and his wife was fraudulent. Judge Dolbin had to rule on the validity of this conveyance in order to determine whether there was any "right, lien title or interest in land" to decide the quiet title action. PA. R. CIV. P. 1061. Judge Dolbin thus properly exercised jurisdiction in the case.

In determining whether the decisions in question were judicial ones, we look at "the nature of the act itself, i.e. whether it is a function normally performed by a judge, and to the expectations of the parties, i.e. whether they dealt with the judge in his judicial capacity." Stump, 435 U.S. at 362. The nature of the decisions Judge

6

Dolbin made in the case–a ruling on the conveyance, a determination of which parties to join in the case, trying the case from the bench as opposed to before a jury, limiting the nature of trial testimony, and various decisions on other evidence–were all ones a judge would normally perform. Kovalchick's major complaint here appears to be that Judge Dolbin ruled against him in the action.[2] While we sympathize with appellant's wish for a different resolution of the matter

---

[2] Among the allegations in Kovalchick's complaint are that his due process was violated by Judge Dolbin when "93. Judge Cyrus P. Dolbin, refused to proceed with a jury trial on December 7, 2004. Peter Kovalchick properly demanded a jury trial. 94. Judge Dolbin boldly moved forward with a non-jury trial, issuing a Decision himself in the case."; "99. Judge Dolbin, had knowledge and information that Peter Kovalchick had a prior Mortgageholder, Homecomings Financial Network, Inc. 100. The failure of Judge Dolbin to inquire into and discover the multi-indispensible [sic] Parties, deprived those parties as aforementioned, and Peter Kovalchick of their, Rights, privileges or immunities secured by the U.S. Constitution, Federal Law and Guaranteed by the 4th, 5th, and 14th Amendments to the United States Constitution"; "104. On or about, January 19, 2004, R/S Financial Corporation discontinued, all Counts of it's [sic] complaint, except those as to Quiet Title. 105. After the trial of December 7, 2004, Judge Dolbin, based his Decision upon his opinion that the property transfers from Anthony and Helen Kovalchick to the Kovalchick children was a fraudulent transfer, made without adequate consideration. 106. The fraudulent conveyance issue was discontinued by the R/S Financial Corporation, and was not an issue before the court, and the Court lacked jurisdiction to rule on that discontinued Count."; "109. At no time prior to the trial of December 7, 2004, or during the trial, did Judge Dolbin inquire into or attempt to discover who was presently in possession of the Property in dispute. 110. In the event, Judge Dolbin, had inquired as to who was in possession of the property, He [sic] would have discovered, that the Kovalchick's were in possession of the property, and Had [sic] been in possession of the property continuously for the past 28 years. R/S Financial Corporation had never been in possession of the property. 111. The Counts in Ejectment initially brought by R/S Financial Corporation in their Complaint were discontinued by R/S Financial Corporation. 112. At the trial, on December 7, 2004, Judge Dolbin, refused to allow any questions regarding the alleged ownership and title which R/S Financial Corporation, claimed it acquired at the Sheriff's Sale of 1983. Judge Dolbin did not require the R/S Financial to establish the strength of their title." These allegations are ample evidence that the conduct of which Kovalchick complains is judicial conduct and immune from suit. (Emergency Motion for Injunctive Relief Complaint).

before Judge Dolbin, his desire to challenge that court's decision cannot overcome the clear immunity that Supreme Court precedent provides judges acting in their judicial capacity. See id. at 364 (holding that "the fact that the issue before the judge is a controversial one is all the more reason that he should be able to act without fear of suit.").

Judge Dolbin is likewise immune from a suit seeking injunctive relief under 42 U.S.C. § 1983, as the plaintiff has not alleged any violation of a declaratory decree or a lack of available declaratory relief. See Azubuko v. Royal, 443 F.3d 302, 304 (3d Cir. 2006) (finding that the Federal Courts Improvement Act prevents suit against a judge because plaintiff "has not alleged that a declaratory decree was violated or that declaratory relief is unavailable."). We therefore affirm the bankruptcy court's finding that Judge Dolbin enjoys absolute judicial immunity against Kovalchick's complaints and uphold the court's dismissal of the complaints against Judge Dolbin.

**V. Dismissal of Kovalchick's Complaints Against R/S Financial and Other Defendants**

The Appellant also raised five causes of action against R/S Financial and related defendants.[3] These complaints consisted of three counts of common-law fraud, one claim of malicious abuse of process, and one for intentional infliction of

---

[3]The complaints were against R/S Financial Corporation, Robert Rosenstein, Miriam Smalls, Sprague and Sprague (a law firm), and Richard A. Sprague. They consisted of: "Count VI: Fraud"; "Count VII: Fraud by Omission or Nondisclosure"; "Count VIII: Fraud"; "Count IX: Malicious Abuse of Process"; "Count X: Intentional Infliction of Emotional Distress". (Emergency Motion for Injunctive Relief Complaint).

8

emotional distress. All of these torts grew out of the appellees' alleged post-petition conduct in the state-court proceedings before Judge Dolbin. In these pleadings, Kovalchick claimed that R/S Financial and its attorneys testified falsely in state court by stating that the company possessed a valid deed to the property that Kovalchick claimed in that action, that the company did not notify indispensable parties to its state court suit, misrepresented the status of certain proceedings related to the case, misused the legal process to evict Kovalchick from property he said he owned, and harmed him emotionally by interfering with his property rights and destroying his faith in the legal system. The bankruptcy court dismissed the complaints for want of jurisdiction because they were neither part of the core bankruptcy proceedings in Kovalchick's case nor related to those proceedings. We affirm the court's holding in this matter.

A bankruptcy court has jurisdiction over four types of matters under Title 11 of the bankruptcy code: "(1) cases 'under' title 11; (2) proceedings 'arising under' title 11; (3) proceedings 'arising in' a case under title 11 and (4) proceedings 'related to' a case under title 11." Stoe v. Flaherty, 436 F.3d 209, 216 (3d Cir. 2006) (citing In re Combustion Eng'g, Inc., 391 F.3d 190, 225 (3d Cir. 2005)). Kovlachik's claims satisfy none of these types.

Kovalchick's claims do not meet the requirements for the first three types of bankruptcy court jurisdiction. The claims are not part of the bankruptcy petition themselves, and thus not covered by the first subcategory of jurisdiction under Title

11. Stoe, 436 F.3d at 216 (finding that jurisdiction "under" Title 11 "refers merely to the bankruptcy petition itself."). The case also fails to satisfy "arising under" jurisdiction, since it does not "[invoke] a substantive right provided by title 11." In re Resorts Int'l, Inc., 372 F.3d 154, 162-3 (3d Cir. 2004) (citing In re Guild and Gallery Plus, 72 F.3d 1171 (3d Cir. 1996)). Arising under jurisdiction "'includes such things as administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens,'" and tort actions based on state court proceedings are not those type of claims. Stoe, 436 F.3d at 216 (quoting Collier on Bankruptcy, § 3.01[4][c][l] at 3-21-22 (15th Rev. Ed. 2005)). Kovalchick's claims also do not invoke "arising in" jurisdiction. These causes of action could exist without filing a bankruptcy petition at all. They therefore do not qualify as matters "arising in" the bankruptcy petition. The bankruptcy court properly found it lacked jurisdiction by that means as well. Id. at 216 (holding that matters "arise in" bankruptcy cases "'if they have no existence outside of the bankruptcy.'") (quoting United States Trustee v. Gryphon at the Stone Mansion, Inc., 166 F.3d 552, 556 (3d Cir. 1999)).

In order to fall under the court's jurisdiction as claims "related to" the bankruptcy filing, such claims must be of the type that "could conceivably have any effect on the estate being administered in bankruptcy." Bobroff v. Continental Bank (In re Bobroff), 766 F.2d 797, 802 (3d Cir. 1985) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). Claims are "related to bankruptcy if the outcome

would alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Pacor, 743 F. 2d at 994. See also In re Federal-Mogul Global, 300 F.3d 368, 381 (3d Cir. 2002) (holding that "Pacor clearly remains good law in this circuit."). The impact of such claims on the estate must bear directly on the bankrupt's estate, and not require "the intervention of yet another lawsuit" to have an impact on the estate. Id. at 382. Tort claims brought after the filing of the bankruptcy petition would not effect the estate and are not related to the bankruptcy petition, since "'any recovery under these claims would belong to the Debtor and not her estate.'" Csondor v. Weinstein, Treiger & Riley (In re Csondor), 309 B.R. 124, 129 (Bankr. E.D. Pa. 2004); See also Steele v. Ocwen Federal Bank (In re Steele), 258 B.R. 319, 322 (Bankr. N.H. 2001) (holding that complaints brought under federal and state fair debt collection practices statutes do not fall under related to jurisdiction since "any recovery on the part of the Debtor would be his alone and would not inure to the benefit of the bankruptcy estate."); McGlynn v. The Credit Store, Inc., 234 B.R. 576, 584 (D.R.I. 1999) (finding no jurisdiction over post-petition claims since "recovery would belong to [debtors], not their respective estates."); Reyes v. FCC National Bank (In re Reyes), 238 B.R. 507, 508 (Bankr. R.I. 1999) (finding no jurisdiction over post-petition unjust enrichment claims against a bank because "these causes of action are not property of this estate, never will be, and any monetary recovery will not benefit creditors.").

11

By these standards, Kovalchick's claims against R/S Financial and the other defendants are not related to his bankruptcy petition, and the bankruptcy court was correct to deny jurisdiction. All of the claims are state-law torts raised after the bankruptcy petition was filed. If Kovalchick were to recover on those claims, he, not his bankruptcy estate, would be entitled to any award for damages. They would not have any effect on his bankruptcy estate. The very fact that one of those claims seeks damages for intentional infliction of emotional distress reveals just how far removed the claims are from the bankruptcy proceeding; an estate cannot be subjected to, much less recover for, intentional infliction of emotional distress. These claims, like the others the debtor has filed, seem evidence of the appellant's inability to accept the results of the state court quiet title action[4], which has been

---

[4]As examples of how this litigation is really an outgrowth of Kovalchick's dissatisfaction with the outcome of his state court case, we note that Count VI alleges that "122. At trial on December 7, 2004, Robert Rosenstein, an officer of the R/S Financial Corporation gave testimony that the R/S Financial Corporation became titleholders of the property of Peter Kovalchick, based on a November 18, 1983 Sheriff Sale. 123. The Sheriff Sale of November 18, 1983, did not seek to sell the property of Peter Kovalchick, nor was Peter Kovalchick, his mortgageholder, of [sic] any of his other Lien holders provided notice of the Sheriff Sale. 124. R/S Financial Corporation did not file the Affidavit required by Pa.R.C.P. 3129. A Sheriff Sale, cannot proceed in the absence of the Affidavit. 125. The deed R/S Financial Corporation claims to possess to Peter Kovalchick's Property obtained through fraud is null and void, and has no legal effect. 126. Defendants, R/S Financial Corporation, Robert Rosenstein, Miriam Smalls, and Sprague & Sprague and Richard A. Sprague, are responsible for their fraud attempting to obtain a deed to Peter Kovalchick's property at Sheriff Sale and use that void deed at trial on December 7, 2004 to take possession of Peter Kovalchick's property." (Emergency Motion for Injunctive Relief Complaint). The state court decided these issues, though wrongly from Kovalchick's perspective. See R/S Financial Corporation v. Kovalchick, No. S-1562-1985 (Pa. Ct. Common Pleas, 2005).

litigated to its ultimate conclusion.[5]  This court would respectfully remind Mr. Kovalchick that, though he despises the outcome, he would do better to move on from his bankruptcy, accept the results of his litigation, and attempt to rebuild his financial life.

In his appellate brief, Kovalchick appears to claim that the decision of the bankruptcy judge should be reopened because R/S Financial and/or its attorneys committed a fraud on the court.  He argues that R/S Financial's attorneys had "allowed their co-counsel to enter a [self-assessed] default judgment" on the appellant, even though those attorneys knew Kovalchick had not been properly served.  (Brief for the Appellant (Doc. 4), at 6-7).  Apparently, Kovalchick feels that the court should reopen the case in order to rectify an injustice created by a decision procured through egregious fraud by R/S Financial and its attorneys.  Kovalchick

---

[5] See R/S Financial Corp. v. Kovalchick, 885 A.2d 985 (Pa. 2005) (denying petition for allowance of appeal and petition for stay nunc pro tunc); Kovalchick v. R/S Financial Corp., 126 S. Ct. 2864 (June 12, 2006) (denying petition for *writ of certiorari*). Furthermore, even if we had jurisdiction under Title 11, the *Rooker-Feldman* doctrine would lead us to decline to hear this case.  That doctrine "precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling."  Whiteford v. Reed, 155 F.3d 671, 674 (3d Cir. 1998).  When "the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit."  Id. The doctrine applies when "the federal court must determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual."  FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996). The five claims against R/S Financial and the other non-judicial defendants are all state torts that stem from the quiet title action in state court; these claims obviously are "inextricably intertwined" with the decision in the state court.  We will not use this court to allow the appellant to continue his fruitless litigation on matters already finally decided in state court.

13

does not offer any evidence, beyond a general averment, that this fraud occurred.[6] This fraud also apparently took place in state court. Here again, the debtor seeks to use the federal courts to reopen a case fully decided by state courts and the United States Supreme Court; he makes no substantive claims that the fraud occurred on the bankruptcy court. Even assuming we would have jurisdiction over a claim of fraud upon a state court, we find that Kovalchick has made no allegations sufficient to allow this court to reopen the case.

The Third Circuit, in Herring v. United States, recently defined the elements of fraud upon the court. Herring v. United States, 424 F.3d 384 (3d Cir. 2005). That court noted that such accusations were so rare that the court had never had to rule on the issue before. Id. at 386. Fraud on the court, essentially an action to reopen a final judgment because of the misconduct of officers of the court, disrupts the "very principle upon which our judicial system is based," and therefore makes reopening such a judgment "not just a high hurdle to climb but a steep cliff-face to scale." Id. Fraud on the court constitutes "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court." Id. Such conduct must be "'the most egregious

---

[6] Reading the appellant's brief liberally, as we are required to do for *pro se* plaintiffs, reveals only two statements asserting incidents where the appellant claims fraud on the court occurred. First, appellant claims that "The Sprague law firm allowed their co-counsel to enter a default judgment, and not only a default judgment, but one they self-assessed, for a judgment of 1.4 million dollars, against a garnishee they never served, and had in their hand, two sworn, documents, a Sheriff's Return and an affidavit from their co-counsel's secretary, both irrefutably disclosing that Peter Kovalchick had not been served." Appellant's Brief, at 6-7. Appellant also claims that "the same thing was done to his brother, who was never served, no documents ever appeared in the record or even an entry of default judgment on the record, but he had to fight for years, to remove a judgment that never existed." Id. We fail to see how we would have jurisdiction over such a claim of fraud, especially since the party allegedly wrong apparently found redress in state court.

14

misconduct directed to the court itself,'" and "'must be supported by clear, unequivocal and convincing evidence.'"  Id. at 387 (quoting In re Coordinated Proceedings in Antibiotic Antitrust Actions, 538 F.2d 180, 195 (8th Cir. 1976)).  Kovalchick essentially claims fraud on the court occurred–though he does not specify which court–because of a dispute about whether proper service took place.  He does not explain how the court was deceived.  The conduct he alleges–misstatements about the service of process, an issue addressed and decided by the state courts–does not meet the requirement of egregious conduct directed at the court itself that deceived that court, and we decline to overturn a court decision based on those grounds.

**VI.  Order Requiring Debtor Kovalchick to Seek Permission from the Court Before Filing Any Further Adversary Petitions in Bankruptcy Court**

The bankruptcy court used its power under the All Writs Act, 28 U.S.C. § 1651, to issue an order restricting Kovalchick from filing pleadings without merit that raise issues identical or similar to those already adjudicated by the court.  (United States Bankruptcy Court for the Middle District of Pennsylvania, case number 05-ap-50295, Doc. 59).  The court noted that such "injunctions are to be viewed as extreme remedies and should be employed rarely and narrowly tailed."  Order, issued April 19, 2006, at 8 (United States Bankruptcy Court for the Middle District of Pennsylvania, case number 05-ap-50295, Doc. 58) (citing In re Oliver, 682 F.2d at 443, 445 (3d Cir. 1982)).  The bankruptcy judge, however, noted that "Kovalchick has filed four adversaries in conjunction with his pending bankruptcy, multiple sanction motions, and he has either sued or tried to recuse almost every state and federal judge he has come before in connection with his bankruptcy and associated adversary proceedings."  Id. at 9.  The debtor also litigated substantially the

15

same issues in a Chapter 13 bankruptcy proceeding filed in 2000, as well as another bankruptcy filed in Pennsylvania's Eastern District. In all of the filings, the court pointed out, "he has only been successful in one instance, by virtue of a default judgment." Id. at 10. As of April 4, 2006, Kovalchick's main bankruptcy docket in the Middle District of Pennsylvania had 304 entries. Id. The Court had invested "countless hours researching and dealing with multiple motions, adversaries, motions for reconsideration, and emergency restraining orders filed by Kovalchick." Id. The court determined that these filings met the conditions required by the All Writs Act and issued an order prohibiting Kovalchick from filing "any further adversary dealing with either the validity of R/S Financial's Proof of Claim or the state court proceedings regarding R/S Financial's claim without first seeking leave of the this Court." Id. Kovalchick also had to certify that any claimed filed had not previously been disposed of by another court. Id. The court's order warned Kovalchick that he could be found in contempt of court if he failed to follow that order. Id.

Debtor Kovalchick does not address the validity of this order in his brief to this court.[7] Accordingly, we will consider that issue waived and uphold the bankruptcy court's

---

[7]Kovalchick raised nineteen issues for review in his brief. Reading his brief liberally, he discussed only eight of them: "I. DID THE BANKRUPTCY JUDGE ERR IN GRANTING IMMUNITY TO THE STATE TRIAL JUDGE IN A, [sic] 42 U.S.C. SECTION 1983 ACTION, WITHOUT ESTABLISHING THE STANDARD THAT THE JUDGE ACTED IN A REASONABLE MANNER AS ESTABLISHED BY THE LAW FOR A QUIET TITLE ACTION UNDER P.A.R.C.P. 1061 (4)?; V. DID THE COURT ERR IN NOT CONSIDERING THE NUMEROUS CREDITORS [sic] RIGHTS AS INDISPENSIBLE [sic] PARTIES?; VIII. DID THE B. JUDGE, MAKE A DETERMINATION ON THESE CLAIMS, IN A MANNER CONTRARY TO OTHER BANKRUPTCY COURT RULINGS ON THESE ISSUES?; IX. DID THE B. JUDGE, MAKE A DETERMINATION ON THESE CLAIMS, IN A MANNER CONTRARY TO THE DISTRICT COURTS, OR THE UNITED STATES SUPREME COURT ON THESE ISSUES?; XII. SHOULD A DEBTOR IN BANKRUPTCY AND AS A

ruling on this matter.  See Nagle v. Alspach, 8 F. 3d 141, 143 (3d Cir. 1993) (holding that "when an issue is either not set forth in the statement of issues presented or not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal."); Gunnart v. Fifth Third Bank, 2006 U.S. Dist. LEXIS 42115, *5 (N.D. Ill. 2006) (holding that "though the Court construes a *pro se* appellant's brief liberally, a party–*pro se* or otherwise–must make *some* argument on an issue to raise it on appeal.").  An appropriate order follows.

---

PLAINTIFF IN AN ADVERSARY, TO RESTORE PROPERTY TO A BANKRUPTCY CASE, BE ALLOWED TO FULLY LITIGATE HIS CLAIMS PURSUANT TO ESTABLISHED LAW?; XV.  DID THE DISMISSAL OF THE PLAINTIFF'S ADVERSARY, DENY HIM HIS FRESH START AND ALL HIS CREDTIOR'S [sic] THEIR RIGHTS UNDER TITLE 11;.  XVI.  SHOULD THE DEFENDANT ATTORNEYS BE DISCIPLINED FOR THEIR ACTIONS IN THIS BANKRUPTCY CASE?; XVIII.  SHOULD A B. JUDGE, MANAGE HIS COURT, IN A MANNER THAT DOES NOT RESULT IN A CONTROVERSY WHICH CAUSES THE ARREST OF A DEBTOR, WHO IS TRYING TO RESTORE HIS PROPERTY TO HIS BANKRUPTCY CASE, TO MAKE HIS PLAN OR AN AMENDED PLAN WORK FOR ALL HIS CREDITORS."   Several of these issues, as well as several of the eleven that Kovalchick raised and did not discuss, dealt with matters unrelated to Judge Thomas's ruling on Kovalchick's complaint.  Those issues raised again Kovalchick's dissatisfaction with the state court's determination of the quiet title action related to his case.  Even if Kovalchick addressed those issues, we would decline to examine them, as we have no authority to reopen a case from another court that has been appealed and affirmed all of the way to the United States Supreme Court.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Bankruptcy Appeal |
|     PETER C. KOVALCHICK, | : | |
|         Debtor | : | No. 3:06cv1066 |
| | : | |
| | : | (Judge Munley) |
| PETER C. KOVALCHICK, | : | |
|         Appellant | : | |
| | : | |
|     v. | : | |
| | : | |
| JUDGE CYRUS P. DOLBIN, | : | |
| R/S FINANCIAL CORPORATION, | : | |
| ROBERT ROSENSTEIN, | : | |
| MIRIAM SMALLS, | : | |
| SPRAGUE & SPRAGUE, and | : | |
| RICHARD A SPRAGUE, | : | |
|         Appellees | : | |

## ORDER

**AND NOW**, to wit, this 19th day of September 2006, Peter C. Kovalchick's appeal of the decision of the bankruptcy court's April 19, 2006 decision is hereby **DISMISSED.**  The clerk of court is directed to close this case.

                              **BY THE COURT**

                              **s/ James M. Munley**
                              **Judge James M. Munley**
                              **United States District Court**